IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Billy Joe Tedder,                         )
                                          )
            Petitioner,                   )    Case No. 8:10-CV-1415-MBS-JDA
                                          )
            v.                            )    **REPORT AND RECOMMENDATION**
                                          )    **OF MAGISTRATE JUDGE**
Warden Anthony Padula,                    )
                                          )
            Respondent.                   )
_____)___

        This matter is before the Court on Respondent's motion for summary judgment.

[Doc. 21.] Petitioner is a state prisoner who seeks relief pursuant to Title 28, United States

Code, Section 2254.  Pursuant to the provisions of Title 28, United States Code, Section

636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to

review post trial petitions for relief and submit findings and recommendations to the District

Court.

        On October 8, 2010, Respondent moved for summary judgment.  [Doc. 21.]  By

Order filed October 28, 2010,  Petitioner was advised that he had ten days from the date

of the Order to file a response to respondent's motion. [Doc. 23.] Subsequently, Petitioner

was granted an additional extension until November 19, 2010 to respond to the motion.

[Doc. 26.]  On January 25, 2011, Petitioner filed a response in opposition to Respondent's

motion for summary judgment.  [Doc 29.]  On February 4, 2011, Respondent filed his reply.

[Doc 31.]

Having carefully considered the parties' submissions and the record in this case, the Court recommends that Respondent's motion for summary judgment [Doc. 21] be granted and the Petition be denied.

## BACKGROUND

Petitioner was arrested on September 13, 2000 pursuant to an arrest warrant for Arson in the Second Degree for setting fire to his residence. [Doc. 29-5.] Subsequently, on December 11, 2000, Petitioner was indicted and charged with Arson in the Second Degree. [App. 448–49.] Petitioner appeared before the Honorable J. C. Nicholson in the Lexington County Court of General Sessions on March 8, 2001, regarding representation.[1] [App. 549, 563.] He did not qualify for a public defender; therefore, Petitioner was advised to retain an attorney. [App. 549, 563.]

On May 29, 2001, Petitioner again appeared before Judge Nicholson without counsel. [App. 549, 563.] Judge Nicholson again advised Petitioner that he did not qualify for a public defender and asked about Petitioner's plans to obtain an attorney. [App. 549, 563.] Petitioner responded that he would have to proceed without an attorney because he could not afford one. [App. 2–3, 549, 563.] A trial date was set for July 16, 2001. [App. 2–3, 563.]

Petitioner was subsequently appointed counsel, Michael Ray Ellisor, on August 30, 2001. [Doc. 29-7.] Petitioner later sent a letter to the court and Mr. Ellisor stating that Petitioner wanted Mr. Ellisor removed as counsel. [App. 12.] The court would not file the letter because Petitioner was represented; therefore, Mr. Ellisor filed a motion to be

---

[1] The transcript of the March 8, 2001 hearing was destroyed on an unknown date. [App. 549–50 n.1.]

relieved because Petitioner did not want Mr. Ellisor to represent Petitioner. [App. 12.] On April 14, 2003, a hearing was held before the Honorable Marc H. Westbrook, during which Petitioner advised the court that he wanted Mr. Ellisor to be relieved as counsel because Mr. Ellisor had done nothing on the case. [App. 12–15.] Upon questioning by the court, Petitioner admitted that he initially refused to meet with his appointed counsel because he thought Mr. Ellisor was a solicitor posing as Petitioner's counsel. [App. 12–13.] Petitioner alleged that he was later willing to meet with Mr. Ellisor, but Mr. Ellisor still did nothing. [App. 13–14.] On April 14, 2003, Mr. Ellisor was relieved as counsel. [App. 15.]

At that time, Judge Westbrook instructed the clerk to appoint a new attorney for Petitioner. [App. 15.] Petitioner advised the court that he would rather not have an attorney. [App. 17.] The following is a portion of the colloquy that occurred between the court and Petitioner:

> [PETITIONER]: Right now I'd rather not have an attorney. I will do it myself. I just need the Court to let me file my own motions.
>
> THE COURT: You want to go forward without your own lawyer?
>
> [PETITIONER]: Yes, sir.
>
> THE COURT: Let's go through a couple of things here.
>
> [PETITIONER]: Can I file my own motions?
>
> ***
>
> THE COURT: Okay. All right. I think we can short cut all this real quick. Let me ask you just a couple of questions. As I gather, Judge Nicholson went through with you —
>
> [PETITIONER]: Yes, sir.

-3-

THE COURT:          — what is involved with being pro se?

PETITIONER:         Yes, sir.  I told him I was ready, and the solicitor told him he was ready.  That's why he set that court date.

THE COURT:          The judge told you the problems, let you know that there was certain dangers to you —

[PETITIONER]:       Yes, sir.

THE COURT:          — representing yourself?

[PETITIONER]:       Yes, sir.  I am not guilty of this charge. That's why I told him I didn't need no attorney.

THE COURT:          Again, you are not listening to me.  Listen to my questions, okay?  I understand you are excited about all this, but just listen to my questions.  He told you there was certain dangers and you understood them?

[PETITIONER]:       Yes, sir.

THE COURT:          Despite those dangers, you wanted to still represent yourself; is that right?

[PETITIONER]:       Yes, sir.

THE COURT:          And do you still?

[PETITIONER]:       Yes, sir.

THE COURT:          Do you still feel like you understand the dangers of representing yourself?

[PETITIONER]:       Yes, sir.

                              ***

THE COURT:          But you understand the dangers —

-4-

> [PETITIONER]:     Yes, sir.
>
> THE COURT:     — and you still want to represent yourself?
>
> [PETITIONER]:     Yes, sir.

[App. 17–24.]  The court allowed Petitioner to represent himself.  [App. 24.]

On May 29, 2003, in a pretrial hearing, Petitioner confirmed his desire to represent himself and was served with notice of intent to seek a life penalty under the recidivist statute.  [App. 37–39.]  On July 7, 2003, Petitioner's case was called to trial.  Four days later, the jury returned a verdict of guilty, and Petitioner was sentenced to life without parole.  [App. 440–46.]

Petitioner attempted to file a Notice of Appeal with the South Carolina Court of Appeals; however, Petitioner's Notice of Appeal was returned to him because it was not in compliance with the South Carolina Appellate Court Rules.  [Doc. 29-15 at 2.]  The appeal was dismissed on March 25, 2004, as untimely.  [App. 587.]

On December 31, 2003, Petitioner filed an application for post-conviction relief ("PCR") [Doc. 22-11], which was dismissed without prejudice so that Petitioner could seek a direct appeal [Doc. 22 at 6; Doc. 29-1 at 9].  On September 16, 2004, Petitioner filed a second PCR application, which was later amended to allege the following grounds for relief:

> (1)     the trial court violated Petitioner's Sixth Amendment right to a fair trial and Fourteenth Amendment due process rights by failing to appoint counsel or to appoint standby counsel to assist him in his defense;
>
> (2)     the trial court violated Petitioner's Sixth Amendment right to a fair trial and Fourteenth Amendment due process rights by depriving him of the right to present exculpatory evidence in his defense;

-5-

(3)     the solicitor violated Petitioner's Sixth Amendment right to a fair trial and Fourteenth Amendment due process rights by lying to the trial court about the absence of a prospective exculpatory witness, the SLED arson investigator, and denied the jury of the investigator's exculpatory testimony that no evidence of arson was found;

(4)     the solicitor violated Petitioner's Sixth Amendment right to a fair trial and Fourteenth Amendment due process rights by committing a *Brady* violation in withholding exculpatory evidence, e.g., the SLED arson investigator's report showing the absence of arson;

(5)     the State failed to serve ten day written advance notice on Petitioner of its intent to seek a life without parole sentence; and

(6)     Petitioner was denied his statutory right to a direct appeal and the assignment of appellate counsel due to his indigent status pursuant to Rule 602, SCACR.

[App. 459–60.]  Petitioner also alleged that his previously-appointed counsel was ineffective for "refusing and failing to investigate, subpoena witnesses, obtain discovery or cooperate in any manner, and instead asked two judges on two different occasions to be relieved as counsel." [App. 460.]

The State argued that Petitioner made an informed decision to knowingly and voluntarily waive his right to counsel but requested an evidentiary hearing to resolve any questions of fact. [App. 463–64.] Addressing Petitioner's argument that he was not served with ten days' written notice of intent to seek life without parole, the State asserted that the issue was not available for consideration in a PCR action and requested that it be summarily dismissed. [App. 464.] Finally, with respect to Petitioner's argument that he was denied the right to a direct appeal, the State averred Petitioner was not denied the right to appeal, but requested an evidentiary hearing to fully resolve this issue as well. [App. 465.]

An evidentiary hearing was held on December 1, 2006, before the Honorable Diane Schafer Goodstein. [App. 467–546.] Petitioner was present for the hearing and was represented by David B. Betts. [App. 467.] On June 28, 2007, the PCR court dismissed Petitioner's claims and found that Petitioner's actions and conduct demonstrated he knowingly waived his Sixth Amendment right to counsel. [App. 547–57.] Petitioner noticed his appeal on August 21, 2007 [Doc. 22-13], and later filed a petition for writ of certiorari with the South Carolina Supreme Court [Doc. 22-14]. Certiorari was denied on February 11, 2010. [Doc. 22-16.] Petitioner's Petition for Rehearing was likewise denied. [Doc. 22-17.]

Petitioner filed this petition for writ of habeas corpus on June 2, 2010 pursuant to 28 U.S.C. § 2254. [Doc. 1.] Petitioner asserts the following grounds in support of his petition:

I.   Petitioner was denied his Sixth and Fourteenth Amendment rights to the assistance of counsel for his defense.

II.  Petitioner was denied his Sixth and Fourteenth Amendment rights where he was denied his statutory right to a direct appeal.

III. Petitioner was denied his Sixth and Fourteenth Amendment rights where he was denied appellate counsel.

[Doc. 1 at 7–17.] As previously stated, Respondent filed a motion for summary judgment on October 8, 2010, which is now ripe for review.

-7-

## APPLICABLE LAW

### Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.*

at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## Habeas Corpus

### *Generally*

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding.  28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor, 529 U.S. 362,* 410 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state

court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).  Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this court's jurisdiction over habeas corpus petitions.  28 U.S.C. § 2254.  This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim.  *Id*.  The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts.  A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### *Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>         (A) the applicant has exhausted the remedies available in the courts of the State; or
>
>         (B)    (I) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. § 17-27-10, et seq.; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 266 S.C. 68, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the

applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP.  Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court.  *Marlar v. State*, 375 S.C. 407, 653 S.E.2d 266 (S.C. 2007).[2]  Further, strict time deadlines govern direct appeal and the filing of a PCR application in the South Carolina courts.  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

Moreover, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the Supreme Court of South Carolina through direct appeal or through an appeal from the denial of the PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.  If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).

*Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas

---

[2]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar.  *Bostick*, 589 F.3d at 162–65.  Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

-12-

petition.  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time.  Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court.  If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the Supreme Court explains:

> ... [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim.  *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)).  When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim.  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

-13-

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. Absent a showing of cause and actual prejudice, a federal court is barred from considering the filed claim. In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply. *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### *Cause and Actual Prejudice*

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the Supreme Court of South Carolina in limited circumstances — where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id*. at 487–89. Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Murray*, 477 U.S. at 492. To show actual

prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

## **DISCUSSION**

**Procedurally-Barred Grounds**

Procedural default is an affirmative defense that is waived if not raised by respondents. *Gray v. Netherland*, 518 U.S. 152,165–66 (1996). It is a petitioner's burden to raise cause and prejudice or actual innocence. If not raised by the petitioner, the court need not consider the defaulted claim. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995).

Respondent acknowledges that Petitioner has exhausted his available state court remedies. [Doc. 22 at 18.] Respondent argues, however, that Grounds II and III of Petitioner's claims for relief are procedurally barred because Petitioner did not properly raise these claims in state court. The Court disagrees with respect to Ground II and will, therefore, address the merits of that claim for relief. However, the Court agrees that Ground III is procedurally barred from federal habeas review because Petitioner did not properly present the issue of appellate representation to the Supreme Court of South Carolina.

Petitioner timely appealed the PCR court's denial of his PCR application by noticing the appeal on August 21, 2007; however, Petitioner's petition for writ of certiorari, filed on May 13, 2008, failed to raise a claim that he was denied appellate counsel. Therefore, Ground III was not fairly presented to the Supreme Court of South Carolina and is procedurally barred from federal habeas review absent a showing of cause and actual prejudice. *Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the

state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review); *Wainwright*, 433 U.S. at 87; *Matthews v. Evatt*, 105 F.3d 907.

The existence of cause must ordinarily turn on whether the petitioner can show some objective factor external to the defense impeded counsel's or the petitioner's efforts to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. Petitioner fails to articulate cause for procedurally defaulting on Ground III. Petitioner filed a petition for writ of certiorari in which this issue could have been raised; however, the issue of denial of appellate counsel was not raised, even though other issues were properly raised. Petitioner cannot establish cause and actual prejudice because he abandoned the opportunity to preserve this specific issue. Therefore, the Court recommends that summary judgment be granted as to Ground III.

**Ground I - Denial of Right to Assistance of Counsel**

The Court will first address Petitioner's claim that he was denied his Sixth and Fourteenth Amendment rights to the assistance of counsel for his defense.[3] It is well established that implicit in the Sixth Amendment right to the assistance of counsel is the right to forego such assistance and to represent oneself. *See Faretta v. California*, 422 U.S. 806, 814 (1975). "[I]t is one thing to hold that every defendant, rich or poor, has the

---

[3]While Petitioner styles his request for relief as a claim that he was denied assistance of counsel, the Court construes his allegations to assert that Petitioner did not knowingly, intelligently, or voluntarily waive his right to counsel. The state court appointed counsel for Petitioner on August 30, 2001; however, counsel was relieved at the request of Petitioner on April 14, 2003. During the April 14, 2003 hearing, Judge Westbrook instructed the clerk to appoint a new attorney for Petitioner, but Petitioner declined the appointment and stated that he wished to represent himself. Therefore, Petitioner was not denied counsel; he waived his right to counsel. Accordingly, his claim that he was denied assistance of counsel must be construed to allege that Petitioner did not knowingly, intelligently, or voluntarily waive his right to counsel.

right to the assistance of counsel, and quite another to say that a State may compel a defendant to accept a lawyer he does not want." *Id*. at 833.

For a waiver of the right to counsel to be valid, however, it must be knowing, intelligent, and voluntary. *See Godinez v. Moran*, 509 U.S. 389, 400–01 (1993); *United States v. Singleton*, 107 F.3d 1091, 1096 (4th Cir. 1997). Whether a waiver of the right to counsel was knowing and intelligent depends, "in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Singleton*, 107 F.3d at 1097 (citations and quotations omitted). Although no "precise procedure or litany for this evaluation" is required, the court must consider the record as a whole, including "the defendant's background capabilities and understanding of the dangers and disadvantages of self-representation." *Id*. at 1097–98. Considering the particular facts and circumstances of the case, the court must be satisfied that the defendant seeking to waive his right to counsel is competent to *waive the right*; he need not be competent to represent himself. *Godinez*, 509 U.S. at 309; *see also Faretta*, 422 U.S. at 836 (clarifying that a defendant "need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation").

The PCR court reviewed the facts and evidence presented at Petitioner's pre-trial hearings, at trial, and at the PCR hearing and concluded Petitioner knowingly and intelligently waived his right to counsel and was aware of the dangers and disadvantages of self representation. Upon a review of the record before the Court — including the transcripts of hearings before the state court on May 29, 2001, April 14, 2003, and May 29,

-17-

2003;[4] the transcript of the PCR hearing; and the order denying PCR — this Court holds that the PCR court's denial of relief on this claim was not contrary to, or an unreasonable application of, federal law.

The PCR court made the following findings:

> [Petitioner] was forty-three years old at the time of the PCR hearing and forty years old at the time of his trial. He has an eighth grade education. [Petitioner] testified he takes Prozac and other medications and sees a mental health counselor. [Petitioner] contends at the time of trial he suffered from bad migraines and seizures and was on numerous medications. However, at the State's request, the trial court held a hearing on [Petitioner's] competency and found [Petitioner] did not need a competency evaluation. During that hearing, [Petitioner] informed the court he understood what was going on, that he did not want an evaluation, that he did not think he needed an evaluation, and that he wanted to get the trial "over with" because he had been asking for it for three years.

> [Petitioner] testified that before this arson trial he had pled guilty once and had gone to trial once. He testified he understood what he was accused of at the trial in question and did not think he needed an attorney because he was innocent and the insurance company declared it an accident. He denied, however, knowing what punishment he was facing, although the clerk records indicate he was advised in writing that the State was seeking life without parole pursuant to the recidivist statute. [Petitioner] did not dispute being served when given an opportunity to do so at his sentencing. At the PCR hearing, he acknowledged the paperwork indicating the State served him with notice, but testified [he] does not remember it.

> [Petitioner] was represented by counsel for well over one year on the challenged charge as well as other charges, but there is no evidence counsel advised him of the dangers

---

[4]As previously stated, the transcript from the March 8, 2001 hearing was destroyed on an unknown date. While it would be desirable to review the March 8, 2001 transcript, its unavailability does not alter the recommendation of the Court.

of self-representation. Although there is no evidence [Petitioner] was attempting to delay the proceedings, the transcripts reveal he wanted very much to be in control of his defense and desired to control the prosecution as well. [Petitioner] was not appointed stand-by counsel. [Petitioner] testified at the PCR hearing that he did not understand court rules, however, this Court notes he struck potential jurors during jury selection and attempted to abide by the court's rulings and instructions at trial. At the PCR hearing he referred to an order for a speedy trial, testified he did not remember what Judge Westbrook had told him, and stated he was going through "a lot of stuff" in jail at the time. He claims he did not know he had an attorney until his hearing on Mr. Ellisor's motion to be relieved.

[Petitioner] appeared cognizant of some defenses available to him including his claim that he was innocent, a defense regarding a shed, and that the insurance company declared the fire an accident. Finally, none of the exchanges between the court and [Petitioner] appeared to consist of mere pro forma answers to pro forma questions. Instead, [Petitioner] was keen on getting his points across and his questions answered. Finally, although [Petitioner] maintains he could not afford to retain an attorney, his decision to fire his court-appointed attorney and proceed pro se did not result from any coercion or mistreatment.

Although [Petitioner] told Judge Westbrook he had been advised of the dangers of self-representation, there is no evidence other than their colloquy that he was so advised. Nevertheless, his claim that he understood the dangers and wanted to proceed pro se does inform this Court's decision. Further [Petitioner] appeared to be intelligent and coherent enough to understand that having an attorney would have its advantages. He also seemed knowledgeable about his rights to discovery and his right to a speedy trial. He had been represented before on these charges as well as others and had gone to trial before and pled guilty before. However, in this case he did not want an attorney because he wanted to be in control of his defense. He understood the charges against him. Further this Court finds based on the clerk records and the trial transcript, that he understood he was facing life without parole despite his PCR testimony to the contrary. At trial, [Petitioner] appeared to understand that he had to conform to the court's instructions and rulings, though he did

not understand procedure. He understood potential defenses and did not waive his right to counsel at a routine hearing with pro forma questions and answers or as a result of coercion or mistreatment. Considering all of these factors, including [Petitioner's] reasons for proceeding pro so, this Court finds and concludes [Petitioner] had sufficient background and experience to intelligently waive his right to counsel. As such, [Petitioner's] claim that he was deprived of his Sixth Amendment right to counsel is denied and dismissed.

[App. 552–54 (internal citations omitted).] Petitioner is unable to establish that the PCR court unreasonably applied clearly established federal law or unreasonably applied the facts in light of the evidence presented at the state court proceeding, as required by 28 U.S.C. § 2254(d). While the colloquy between the state court and Petitioner could have more directly addressed the issues associated with self-representation and waiving the right to counsel, there is no specific dialogue the court is required to have with a defendant. *See United States v. Gallop*, 838 F.2d 105, 110 (4th Cir. 1988) (holding that a trial court's failure to advise a defendant of the dangers and disadvantages of self-representation does not automatically render the proceedings unconstitutional and, in the absence of a specific inquiry, courts should review the record as a whole to determine the sufficiency of a defendant's waiver of counsel). Additionally, there is no indication in the record that the state court became concerned at any time regarding Petitioner's ability to understand or participate in his defense. Likewise, there is no indication that Petitioner withdrew his request to proceed pro se either verbally or through actions.

Petitioner argues that he was coerced into stating that "[r]ight now I'd rather not have an attorney. I will do it myself." [Doc. 1 at 10.] Petitioner also asserts that he was coerced into proceeding without counsel because the trial judge argued with Petitioner accusing "...him of arguing each time he made an attempt to prevent false facts form being entered

into the record or attempted to explain things to the court based on first-hand knowledge."
[Doc. 1 at 10.]  The Court finds these arguments unpersuasive.  Petitioner was offered appointed counsel after his first appointed attorney was relieved.  However, Petitioner repeatedly expressed his desire to represent himself during his colloquy with Judge Westbrook on April 14, 2003 and again during a pretrial hearing on May 29, 2003.

The Court finds that the PCR court was not unreasonable in concluding that Petitioner's waiver of his right to counsel was knowing, intelligent, and voluntary. Accordingly, the Court recommends that summary judgment be granted as to Ground I.

**Ground II - Denial of Right to Appeal**

The court will next address Petitioner's claim that he was denied his Sixth and Fourteenth Amendment rights where he was denied his right to a direct appeal.  Unlike the right to trial, which is guaranteed by the Sixth Amendment, there is no constitutional right to an appeal.  *Abney v. United States*, 431 U.S. 651, 656 (1977).  Rather, where the right to appeal a criminal conviction exists, it exists only by statute. *Id.*; *see also Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 402 (2001) (noting that "each State has created mechanisms for both direct appeal and state post-conviction review, . . . even though there is no constitutional mandate that they do so" (internal citations omitted)). Accordingly, Petitioner's claim that he was denied the right to a direct appeal is not cognizable on federal habeas review because, pursuant to § 2254, a petitioner may obtain relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Therefore, the Court recommends that summary judgment be granted as to Ground II.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

March 18, 2011
Greenville, South Carolina